UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | | |
|---|---|---|
| SCOTT EUGENE EVANOFF, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:17 CV 41 JMB |
| | ) | |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Deputy Commissioner of Operations, | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER[1]

Plaintiff Scott Eugene Evanoff ("Plaintiff") appeals the decision of the Deputy Commissioner of Operations, Social Security Administration ("Defendant") denying his application for disability benefits under Title II of the Social Security Act, see 42 U.S.C. §§ 401 et seq. Substantial evidence supports the Commissioner's decision, and therefore it is affirmed. See 42 U.S.C. § 405(g).

I.  **Procedural History & Summary of Memorandum Decision**

On January 31, 2014, Plaintiff filed an application for disability benefits, arguing that his disability began on April 8, 2011, as a result of diabetes, hypertension, edentulism, hiatal hernia, intellectual disabilities, COPD, kyphosis, low back pain, obesity, lung disease, degenerative disc disease, spine problems, and depression. (Tr. 71, 155-61) On May 21, 2014, Plaintiff's claims were denied upon initial consideration. (Tr. 88-92) Plaintiff then requested a hearing before an

---

[1] This case is before the undersigned for judicial review pursuant to 42 U.S.C. § 405(g), with the consent of the parties under 28 U.S.C. § 636(c).

1

Administrative Law Judge ("ALJ"). Plaintiff appeared at the hearing (with counsel) on February 16, 2016, and testified concerning the nature of his disability, his functional limitations, and his past work. (Tr. 39-69) A vocational expert ("VE") testified about the nature of Plaintiff's past work, and opined as to Plaintiff's inability to perform his past relevant work. (Tr. 65-68) Based on hypothetical questions posed to a VE, the ALJ found that Plaintiff could perform other work that existed in substantial numbers in the national economy, namely a garment sorter, folding machine operator, and a produce sorter. After taking Plaintiff's testimony, considering the VE's testimony and the results of a consultative examination, and after reviewing the rest of the evidence of record, the ALJ issued a decision on March 8, 2016, finding that Plaintiff was not disabled and denying benefits. (Tr. 18-34)

Plaintiff sought review of the ALJ's decision before the Appeals Council. (Tr. 1-5) On April 28, 2017, the Appeals Council denied review of (Tr. 1-3), thereby making the ALJ's March 2016 decision the final decision of the Commissioner. Plaintiff has exhausted his administrative remedies, and his appeal is properly before this Court. See 42 U.S.C. § 405(g).

In his brief to this Court, Plaintiff does not challenge the ALJ's evaluation of his physical impairments and resulting limitations. Rather, Plaintiff challenges the ALJ's reliance on Dr. Spencer's opinion that Plaintiff had borderline intellectual functioning based on his GAF score, rather than relying on the full scale IQ score obtained through Wechsler Adult Intelligence Scale ("WAIS-IV") testing. The Commissioner filed a detailed brief in opposition.

As explained below, the Court concludes that the ALJ did not err in relying on Dr. Spencer's opinion regarding Plaintiff's intellectual functioning. Although Plaintiff focuses solely on the ALJ's reliance on his IQ score, the Court finds that the ALJ relied on other factors, including Plaintiff's expansive activities of daily living in terms of his level of functioning, his

routine and conservative treatment, his significant continued work, and inconsistencies between his allegations and the medical records.

II. **Third Party Statement – Function Report Adult** (Tr. 233-41)

The administrative record before this Court includes a Function Report Adult – Third Party completed on March 13, 2014, by Triana Evanoff, Plaintiff's wife. (Tr. 225-28, 231)

In a function report, Ms. Evanoff indicated that Plaintiff was capable of a range of daily activities including planning meals, visiting with friends, cleaning the house, doing other household chores, gardening, playing on the computer, doing range of motion exercises, fishing, hunting, programming television programs, playing computer games, and helping take care of grandchildren. (Tr. 234-35, 238)

III. **Function Report – Adult** (Tr. 252-62)

In a Function Report – Adult, completed by Plaintiff on March 13, 2014, with the assistance of Ms. Evanoff, Plaintiff asserted that he had difficulty comprehending, and that his hobbies include fishing, playing computer games for ninety minutes at one sitting, and programming television shows. Plaintiff also reported that he shops for car/truck parts, fishing gear, clothes, and groceries.

IV. **Medical Records**

The administrative record before this Court includes medical records. Although the Court has considered all of the medical evidence, only records relevant to the ALJ's decision and Plaintiff's challenge to the ALJ's decision are discussed. The following is a summary of pertinent portions of the medical records relevant to the matters at issue in this case.

A. **Hannibal Clinic Operations – Dr. George Kerkemeyer** (Tr. 332-41)

On October 24, 2012, Plaintiff received treatment at Hannibal Clinic Operations so that

3

Dr. George Kerkemeyer could complete an employee health examination. Plaintiff reported that he had obtained a new job since being laid off from his job at a factory. In follow-up treatment on November 12, 2012, Plaintiff reported that he started working in housekeeping. During treatment on February 13, 2013, Plaintiff reported that his work as a housekeeper was going well.

  **B.**  **Consultative Examination – Dr. Thomas Spencer** (Tr. 360-65)

On May 8, 2014, Dr. Thomas Spencer, PsyD., performed a psychological evaluation to assist in the disability determination.

Plaintiff reported working as a housekeeper for almost a year but, after an altercation with a peer, he was fired. While in school, Plaintiff was in the special education classes, but he completed high school.

Dr. Spencer administered several psychological assessments, including the WAIS-IV, where Plaintiff obtained a full scale IQ score of 64, with a confidence interval of 95%. Dr. Spencer noted that this score falls within the extremely low range of intellectual functioning and that "after speaking with him, this examiner believes his score is a bit low and that he likely functions in the Borderline range of abilities." (Tr. 362)

Dr. Spencer diagnosed Plaintiff with borderline intellectual functioning and assessed him with a GAF[2] of 60 to 65.

In his conclusion, Dr. Spencer opined that Plaintiff's WAIS-IV score "suggests he functions in the mild range of mental retardation, but this examiner believes [he] functions in the

---

[2] A GAF score is a numerical summary of a clinician's judgment of an individual's psychological, social, and occupational functioning on a hypothetical continuum of mental health on a scale of one hundred. See Diagnostic and Statistical Manual of Mental Disorders, 32-34 (4th ed). A GAF score of 51-60 represents moderate symptoms or any moderate difficulty in social, occupational, or school functioning. Id. at 34.

borderline range of abilities based on his presentation today." (Tr. 363) Dr. Spencer opined that Plaintiff "retains the ability to understand and remember simple instructions" and "the ability to engage and persist with simple tasks." (Tr. 363)

## V. **Hearing Before the ALJ** (Tr. 39-69)

The ALJ conducted a hearing on February 16, 2016. At the hearing, both Plaintiff and a VE testified. At the outset of the hearing, Plaintiff's counsel noted no objections to the proposed exhibits.

### A. **Plaintiff's Testimony**

Plaintiff began his testimony by discussing how he attended special education classes in high school but he admitted that he is able to read and understand a newspaper. (Tr. 44) Plaintiff testified that he was currently working twenty to twenty-five hours a week as a janitor. (Tr. 46) Before working as a janitor, Plaintiff worked as an assembly line worker but he was laid off from that job because he was unable to keep up with the job requirements. (Tr. 47-48) Plaintiff testified that he has problems with his ability to think and to remember doctor's appointments and phone numbers. (Tr. 56) When asked about returning to his job as a finisher/polisher, Plaintiff indicated that he would have difficulty bending over, standing on his feet for eight hours and lifting twenty-five to fifty pound objects. (Tr. 60) Plaintiff testified that he can lift five to ten pounds and can complete all household chores. (Tr. 61)

### B. **VE's Testimony**

A VE testified regarding Plaintiff's past work, and Plaintiff's current ability to work. The VE testified that Plaintiff's reported work history did not have any jobs that would be classified as sedentary. (Tr. 64)

The ALJ asked the VE a series of hypothetical questions to determine whether someone

with Plaintiff's age, limited education, work experience, and specific functional limitations would be able to find a job in the local or national economy. (Tr. 65) The VE responded that such a hypothetical person would be able to perform the job duties of a garment sorter, a folding machine operator, and an agricultural produce sorter. (Tr. 66) The ALJ next asked if an individual limited to understanding and remembering and carrying out simple instructions only would be able to perform the jobs she listed. (Tr. 67) The VE responded yes.

**VI.** **ALJ's Decision**

In a decision dated March 8, 2016, the ALJ determined that Plaintiff was not disabled under the Social Security Act. (Tr. 21-34) In arriving at his decision, the ALJ followed the required five-step inquiry. The ALJ found that Plaintiff has not engaged in substantial gainful activity since April 8, 2011, the alleged date of disability. (Tr. 23) The ALJ determined that Plaintiff had the severe impairments of degenerative disc disease, diabetes mellitus, right shoulder adhesive capsulitis, obesity, an adjustment disorder, and borderline intellectual functioning. (Tr. 24) The ALJ further determined that, despite his impairments, Plaintiff retained the RFC to perform light work with the following additional limitations/restrictions: (1) Plaintiff "can lift and/or carry 20 pounds occasionally and less10 pounds frequently;" (2) Plaintiff "can sit for six hours out of an eight-hour workday;" (3) Plaintiff "can stand and/or walk for six hours in an eight-hour workday;" (4) Plaintiff "can occasionally climb ramps or stairs, ladders, ropes, or scaffolds, stoop, kneel, crouch, or crawl;" (5) Plaintiff "can frequently reach, but can only occasionally reach overhead;" (6) Plaintiff "must avoid concentrated exposure to pulmonary irritants such as smoke, fumes, dusts, and gases" and "hazards such as dangerous moving machinery and unprotected heights;" and (7) Plaintiff "can understand, remember, and carry out simple instructions." (Tr. 26)

The ALJ supported his RFC determination with a thorough analysis of the record evidence. (Tr. 29-33) The ALJ considered Plaintiff's alleged mental impairments and noted that although Plaintiff has diagnoses of adjustment disorder, depressed and borderline intellectual functioning, "the objective evidence of record does not support the severity of [Plaintiff's] allegations." (Tr. 27) The ALJ also considered Plaintiff's alleged back impairment, diabetes mellitus, and adhesive capsulitis of his right shoulder, chronic obstructive pulmonary disease, and obesity. (Tr. 28-31)

The ALJ next considered Plaintiff's subjective allegations regarding his symptoms and limitations, but found he was not fully credible. (Tr. 31-32) The ALJ addressed the objective medical record evidence regarding Plaintiff's alleged mental impairment, and found that "based on the consultative examiner's report with an opinion that his IQ is likely above the measured 64. Moreover, his past work shows that he is capable of at least unskilled work despite his borderline intellectual functioning. There is little evidence of a significant impairment or limitation stemming directly from [Plaintiff's] affective disorder." (Tr. 31) The ALJ cited to Plaintiff's significant variety of daily activities, routine and conservative treatment, significant continued work, receipt of unemployment benefits, and inconsistencies between his allegations and the medical records, as other credibility factors for finding Plaintiff not fully credible. (Tr. 31-32)

After examining the medical evidence, the ALJ accorded Dr. Thomas Spencer's opinion significant weight inasmuch as his conclusions were "fully consistent with the findings from his own examination, [Plaintiff's] longitudinal pattern of treatment, and his expansive activities of daily living." (Tr. 32)

The ALJ concluded that Plaintiff could not return to his past relevant work but that he

7

would be able to perform the requirements of other occupations such as a sorter, a folding machine operator, and a produce sorter. (Tr. 33-34) In making his determination, the ALJ relied on testimony of a VE. Accordingly, the ALJ concluded that Plaintiff was not under a disability under the Act. (Tr. 34)

The ALJ's decision is discussed in greater detail below in the context of the issue Plaintiff has raised in this matter.

## VII. Standard of Review and Legal Framework

"To be eligible for SSI benefits, [Plaintiff] must prove that he is disabled …." Baker v. Sec'y of Health and Human Servs., 955 F.2d 552, 555 (8th Cir. 1992); see also Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001). Under the Act, a disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c (a)(3)(A). A plaintiff will be found to have a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A) and 1382c(a)(3)(B). See also Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

Per regulations promulgated by the Commissioner, 20 C.F.R § 404.1520, "[t]he ALJ follows 'the familiar five-step process' to determine whether an individual is disabled…. The ALJ consider[s] whether: (1) the claimant was employed; (2) he was severely impaired; (3) his impairment was, or was comparable to, a listed impairment; (4) he could perform past relevant work; and if not, (5) whether he could perform any other kind of work." Martise v. Astrue, 641

F.3d 909, 921 (8th Cir. 2011) (quoting Halverson v. Astrue, 600 F.3d 922, 929 (8th Cir. 2010)). See also Bowen, 482 U.S. at 140-42 (explaining the five-step process).

The Eighth Circuit has repeatedly emphasized that a district court's review of an ALJ's disability determination is intended to be narrow and that courts should "defer heavily to the findings and conclusions of the Social Security Administration." Hurd v. Astrue, 621 F.3d 734, 738 (8th Cir. 2010) (quoting Howard v. Massanari, 255 F.3d 577, 581 (8th Cir. 2001)). The ALJ's findings should be affirmed if they are supported by "substantial evidence" on the record as a whole. See Finch v. Astrue, 547 F.3d 933, 935 (8th Cir. 2008). Substantial evidence is "less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." Juszczyk v. Astrue, 542 F.3d 626, 631 (8th Cir. 2008); see also Wildman v. Astrue, 964 F.3d 959, 965 (8th Cir. 2010) (same).

Despite this deferential stance, a district court's review must be "more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision." Beckley v. Apfel, 152 F.3d 1056, 1059 (8th Cir. 1998). The district court must "also take into account whatever in the record fairly detracts from that decision." Id. Specifically, in reviewing the Commissioner's decision, a district court is required to examine the entire administrative record and consider:

1. The credibility findings made by the ALJ.
2. The claimant's vocational factors.
3. The medical evidence from treating and consulting physicians.
4. The claimant's subjective complaints relating to exertional and non-exertional activities and impairments.
5. Any corroboration by third parties of the claimant's impairments.
6. The testimony of vocational experts, when required, which is based upon a proper hypothetical question which sets forth the claimant's impairment.

Stewart v. Sec'y of Health & Human Servs., 957 F.2d 581, 585-86 (8th Cir. 1992) (citation omitted).

Finally, a reviewing court should not disturb the ALJ's decision unless it falls outside the available "zone of choice" defined by the evidence of record. Buckner v. Astrue, 646 F.3d 549, 556 (8th Cir. 2011). A decision does not fall outside that zone simply because the reviewing court might have reached a different conclusion had it been the finder of fact in the first instance. Id.; see also McNamara v. Astrue, 590 F.3d 607, 610 (8th Cir. 2010) (explaining that if substantial evidence supports the Commissioner's decision, the court "may not reverse, even if inconsistent conclusions may be drawn from the evidence, and [the court] may have reached a different outcome").

## VIII. Analysis of Issue Presented[3]

In his brief to this Court, Plaintiff challenges the ALJ's reliance on Dr. Spencer's opinion that Plaintiff had borderline intellectual functioning based on his GAF score rather than relying on the IQ score obtained through WAIS-IV testing.

During the May 8, 2014, psychological evaluation, Dr. Spencer administered several psychological assessments, including the WAIS-IV, where Plaintiff obtained a full scale IQ score

---

[3] Plaintiff does not specifically challenge the ALJ's adverse credibility finding in his Brief. Moreover, the undersigned finds the ALJ complied with the strictures of Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984), and there is substantial evidence in the record to support the ALJ's analysis of Plaintiff's credibility. A review of the ALJ's decision shows he partially discredited Plaintiff's subjective complaints for good reason and thoroughly discussed the objective findings of the treating doctors, their routine and conservative treatment, see Gowell v. Apfel, 242 F.3d 793, 796 (8th Cir. 2001) (conservative treatment supported the ALJ's adverse credibility determination); significant work activity during the alleged period of disability, significant variety of activities of daily living, and receipt of unemployment benefits and the inconsistencies in the record, in support of his adverse credibility determination. See Julin v. Colvin, 826 F.3d 1082, 1086 (8th Cir. 2016) (explaining that "[c]redibility determinations are the province of the ALJ" and the deference owed to such determinations); Gregg v. Barnhart, 354 F.3d 710, 713 (8th Cir. 2003) (holding that "[i]f an ALJ explicitly discredits the [plaintiff's] testimony and gives good reasons for doing so, [the reviewing court] will normally defer to the ALJ's credibility determination").

of 64 with a confidence interval of 95%.[4]  See Gomez v. Astrue, 695 F.Supp.2d 1049, 1054 n.3 (C.D. Cal. 2010) ("A 90% confidence interval means that the investigator is 90% confident that the true estimate lies within the confidence interval.").  Dr. Spencer noted that this score falls within the extremely low range of intellectual functioning and that "after speaking with [Plaintiff], this examiner believes his score is a bit low and that he likely functions in the Borderline range of abilities."  (Tr. 362)  Dr. Spencer diagnosed Plaintiff with borderline intellectual functioning and assessed him with a GAF of 60 to 65.

In his conclusion, Dr. Spencer opined that Plaintiff's WAIS-IV score "suggests he functions in the mild range of mental retardation, but this examiner believes [he] functions in the borderline range of abilities based on his presentation today."  (Tr. 363)  Dr. Spencer opined that Plaintiff "retains the ability to understand and remember simple instructions" and retains "the ability to engage and persist with simple tasks."  (Tr. 363)

In according Dr. Spencer's opinion significant weight, the ALJ opined that Dr. Spencer's GAF score of 60 to 65[5] was "consistent with his narrative opinion.  As a licensed psychologist,

---

[4] A "confidence interval" is used to indicate the reliability of a point estimate of a parameter. The confidence interval is a range of values above and below a point estimate and within which the parameter is estimated to lie.  The confidence interval is qualified by a confidence level, generally expressed as a estimate.  A 95% confident interval means that the investigator is 95% confident that the true estimate lies within the confidence level.  See Wikipedia, Confidence interval, at http://en.Wikipedia.org/wiki/Confidence_interval; United States National Library of Medicine – National Institutes of Health, National Information Center on Health Services Research and Health Care Technology, Health Technology Assessment101: Glossary, at http://www.nim.nih.gov/nichsr/hta101/ta101014.html.

[5] Plaintiff argues that the ALJ discounted his IQ score based on his GAF score.  Plaintiff is correct in that the GAF scale has not been endorsed by the Social Security Administration for use in the Social Security and SSI disability programs and "does not have a direct correlation to the severity requirements in [the] mental disorders listings."  65 FR 50746-01.50764.  GAF scores are to be treated like any other piece of evidence in the case record in that unless a GAF score is well-supported and consistent with other record evidence it is entitled to little weight.  Soc. Sec. Admin., Global Assessment of Functioning (GAF) Evidence in Disability Adjudication, AM-

11

[Dr. Spencer] is qualified to render an opinion as to [Plaintiff's] mental ability to function. His conclusions are fully consistent with the findings from his own examination, [Plaintiff's] longitudinal pattern of treatment, and his expansive activities of daily living." (Tr. 32)

Plaintiff places too much emphasis on one factor – his IQ score. While an IQ test is helpful in determining whether a claimant has a mental impairment, it is not dispositive, and other information illustrating a claimant's ability to function can be used to discredit the results of an IQ test. See Johnson v. Barnhart, 390 F.3d 1067, 1071 (8th Cir. 2004). "Indeed, test scores of this sort should be examined to assure the consistency with daily activities and behavior." McKinney v. Colvin, 973 F.Supp. 2d 1011, 1026 (E.D. Mo. 2013). The Eighth Circuit has emphasized that IQ scores must be valid; that the Commissioner need not rely exclusively on IQ scores, and that the Commissioner may disregard test scores that are inconsistent with a claimant's demonstrated activities and abilities as reflected in the record as a whole. Muncy v. Apfel, 247 F.3d 728, 733 (8th Cir. 2001); McKinney, 973 F.Supp. 2d at 1026 ("An ALJ is not required to accept a claimant's IQ scores … and may reject scores that are inconsistent with the record."). That is exactly the process the ALJ followed in this case.

Gauging the validity of IQ testing is within the province of the ALJ. See Phillips v. Colvin, 721 F.3d 623 (8th Cir. 2013) (task of resolving conflicts in evidence regarding validity of IQ test was the domain of the ALJ). Specifically, the Eighth Circuit has affirmed an ALJ's finding that a claimant did not meet Listing 12.05 despite the presence of IQ scores in the necessary range where there were inconsistencies between the claimant's daily activities and functioning and his low IQ scores. See id. at 629. "An ALJ may reject IQ scores that are inconsistent with a claimant's daily activities and behavior, especially when the scores are based

---

13066 (July 22, 2013) REV (Oct. 14, 2014).

on a one time examination by a nontreating psychologist." Chunn v. Barnhart, 397 F.3d 667, 672 (8th Cir. 2005).

The Court finds that the ALJ properly considered the validity of Plaintiff's IQ score and that the ALJ's decision, in regard to the weight given to Dr. Spencer's opinion and the full IQ score of 64, is based on substantial evidence. Dr. Spencer found Plaintiff had borderline intellectual functioning but the mere existence of a mental condition is not per se disabling. See Dunlap v. Harris, 649 F.2d 637, 638 (8th Cir. 1981). Also, as considered by the ALJ, Dr. Spencer is a mental health specialist who examined Plaintiff, and therefore, his opinion was entitled to significant weight. See Kelley v. Callahan, 133 F.3d 583, 589 (8th Cir. 1998) ("The Commissioner is encouraged to give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than the opinion of a source who is not a specialist."). Dr. Spencer did not suggest that, based on his borderline intellectual functioning, Plaintiff was unable to engage in substantial gainful activity. See Young v. Apfel, 221 F.3d 1065, 1069 (8th Cir. 2000) ("We find it significant that no physician who examined Young submitted a medical conclusion that she is disabled and unable to perform any type of work").

The ALJ found that Plaintiff's past work shows that he is capable of at least unskilled work despite his borderline intellectual functioning. Also, substantial evidence supports the finding the ALJ accounted for Plaintiff's borderline intellectual functioning in his RFC determination by limiting Plaintiff to understanding, remembering, and carrying out simple instructions. The record establishes that Plaintiff is a high-school graduate, notwithstanding his receipt of special education services. (Tr. 44, 348-59) As discussed with regard to Plaintiff's credibility, Plaintiff's medical records include support for Dr. Spencer's opinions, and doctors who saw Plaintiff for physical conditions during the relevant time period did not note that

13

Plaintiff had significant mental abnormalities. See Lauer v. Apfel, 245 F.3d 700, 703 (8th Cir. 2001) ("[s]ome medical evidence must support the determination of the claimant's RFC, and the ALJ should obtain medical evidence that addresses the claimant's ability to function in the workplace.").

In the instant case, the ALJ explained his reasons for giving Dr. Spencer's opinion significant weight, including the findings of his own examination, Dr. Spencer being an examining mental health professional, Plaintiff's longitudinal pattern of treatment, and Plaintiff's expansive activities of daily living in terms of his level of functioning.[6] The ALJ's determination to give Dr. Spencer's opinion significant weight is supported by substantial evidence in the record as a whole.

## IX. Conclusion

For the foregoing reasons, the Court finds that the ALJ's determination is supported by substantial evidence on the record as a whole. See Finch, 547 F.3d at 935. Similarly, the Court cannot say that the ALJ's determinations in this regard fall outside the available "zone of choice," defined by the record in this case. See Buckner, 646 F.3d at 556. For the reasons set forth above, the Commissioner's decision denying benefits is affirmed. Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**.

A separate Judgment shall accompany this Memorandum and Order.

/s/ *John M. Bodenhausen*
JOHN M. BODENHAUSEN
UNITED STATES MAGISTRATE JUDGE

Dated this 19th day of September, 2018.

---

[6] The ALJ discussed Plaintiff's significant variety of daily activities such as living alone, maintaining a home, doing daily chores without assistance, preparing simple meals, working part-time, driving a car to work, shopping, and occasionally hunting, and fishing. The ALJ also pointed out that Plaintiff performed work after the alleged disability onset date.